[No. A106685. First Dist., Div. One. Sept. 14, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES ALLEN SMITH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

■■■■■■■■■■■■■■■

COUNSEL

William M. Balin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Linda M. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARGULIES, J.—Following a court trial that ended in a mistrial, Charles Allen Smith was found guilty, on retrial by the court, of multiple offenses against his former spouse, including grand theft, inflicting corporal injury, making criminal threats, false imprisonment, and dissuading the victim by force or threat. Defendant contends that his convictions must be reversed because the trial court violated his state and federal constitutional right to a jury trial by failing to obtain a second, in-court waiver of his jury right before retrying him. In the alternative, defendant maintains that the court erred in finding him guilty of grand theft as a lesser included offense of burglary, and improperly imposing consecutive sentences for certain of his offenses in violation of Penal Code section 654.[1] We find no merit in defendant's jury trial argument. We reverse as to his grand theft conviction, and order the sentences for two of defendant's offenses to be stayed pursuant to section 654. In all other respects, we affirm the judgment.

## I. BACKGROUND

Charles Allen Smith was charged by information with residential burglary (§ 459; count I); corporal injury to a spouse (§ 273.5, subd. (a); count II); making criminal threats (§ 422; count III); false imprisonment by violence (§ 236; count IV); dissuading a victim or witness by force or threat (§ 136.1, subd. (c)(1); count V); first degree residential burglary (§ 459; count VI); two counts of unlawful driving or taking a motor vehicle (Veh. Code, § 10851, subd. (a); counts VII and IX);[2] four counts of misdemeanor battery (§ 243, subd. (e)(1); counts X through XIII); and misdemeanor vandalism (§ 594, subd. (b)(2)(A); count XIV). Counts II, IV, and V included enhancements for personally inflicting great bodily injury under circumstances involving domestic violence. (§ 12022.7, subd. (e).)

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Count VIII, charging robbery (§ 211), was dismissed before trial.

On August 1, 2003, defendant waived his right to a jury trial, and a court trial began. On August 20, 2003, during the prosecution's case-in-chief, the trial court granted the defense motion for a mistrial. A second court trial was held on March 10, 2004.

## A. *Trial Evidence*

Defendant and Elaine Faucett, a high school physical education teacher, were married in November 2000. Faucett divorced defendant in March 2002, remarried him in November 2002, and then initiated divorce proceedings against him again in February 2003. Faucett purchased her house in Vallejo and her Kia automobile before her first marriage to defendant. She remained the sole owner of the house and automobile during her marriage to defendant.

Faucett suffered from bipolar disorder that could make her anxious, forgetful, and unable to focus. She admitted lying at the preliminary hearing and testified at the second trial under a grant of immunity. She also admitted lying in defendant's first trial because of the amount of prison time he was facing.

The charges in this case arose from a series of incidents that occurred in January and February 2002.

### *January 12 to 29 (counts IX through XIV)*

On January 12, 2002, Faucett served defendant with divorce papers while they were at her house in Vallejo. Defendant punched a hole in a bedroom door and threw a plant across the room. He shoved Faucett into the hallway with both hands, and then left.

On January 21, after Faucett refused defendant's request for a ride, he punched her, took her car keys, and left in Faucett's car without her permission.

On January 27, defendant asked for a ride to Kaiser. Faucett agreed on the condition that he return her pearl necklace, which he had taken from her jewelry box. After she pulled into the Kaiser parking lot, defendant grabbed her keys, and they both struggled for them. Defendant then started choking her with both hands. She tried to push him off and screamed; eventually he stopped, exited the car, and ran away.

On January 29, Faucett returned home and pulled into her garage. Defendant appeared and asked to use her car. She refused. Defendant opened the driver's door, pulled Faucett out of the car, and pushed her two or three

times. He got into the car and drove away in it without her permission. Defendant returned Faucett's car two hours later, after she had called the police.

*February 15 (counts VI and VII)*

On February 15, 2002, defendant came to see Faucett at her school; she was surprised to see him. She had purchased defendant a one-way ticket to Ohio. Defendant had told Faucett he was starting his life over and would not be back. On the 15th, defendant asked Faucett where her car was, but she did not tell him. When Faucett went to get her car after work, she discovered it was gone. Faucett kept an extra car key at home. Defendant did not have permission to take the car. When she returned home, Faucett discovered her DVD player, several video games, and her son's Play Station box were missing. Defendant did not have permission to take these items. Faucett thought the items were worth between $400 and $500.

Defendant showed up later that night with Faucett's car and she let him into the house. He told her that he had taken the missing items to "teach [her] a lesson" and had given them to someone for safekeeping. Defendant later stated that he had given the items to a friend for "safekeeping" and as "collateral" for drugs. He promised to try and get them back. When defendant returned several hours later, he did not have the items. He stayed at Faucett's house with her permission on the night of February 15.

The next day, February 16, defendant left again to get the items, and returned empty-handed. With Faucett's permission, defendant stayed at Faucett's house that night.

*February 17 (counts I through V)*

On February 17, 2002, Faucett told defendant he needed to stay someplace else. Faucett drove defendant to a Christian Help Center so he would have a place to stay. He refused to get out and came home with her.

At Faucett's house, they started arguing about where he would stay. She asked him to leave and told him to stay somewhere else, but he refused and became angry and irrational. Defendant then used her telephone. Faucett did not want him at her house, and was concerned for her safety because of the way he was acting. While defendant was on the telephone, she activated her panic alarm, not realizing it was audible. The alarm sounded inside the house.

Defendant then ran toward her and pushed her into the bedroom. After they heard police at the front door, he threatened that if she screamed or made any

noise, he would hit her. He said he was not ready to go to jail again. When Faucett tried to get away, defendant threatened that if she screamed, he would get a knife from the kitchen and stab her. Defendant told Faucett he was going to tie her up with an electrical cord and duct tape. She took his threats seriously and was concerned for her safety.

Defendant pinned Faucett down in the bedroom and covered her mouth in an attempt to keep her quiet. Defendant had her on the bed and on the floor. He told her, "Don't move or else . . . I'll hit you." Faucett tried to get out of the bedroom, and told defendant she wanted to leave, but he prevented her from doing so.

Toward the end of the incident, with the police inside the house, Faucett screamed and defendant hit her in the face, knocking her unconscious for a moment or two. When Faucett came to, she was on the floor with defendant straddling her. The next thing she knew, police and medics were shining flashlights at them. Defendant's blow injured Faucett's right eye and forehead, causing a wound that required six stitches to close and leaving her scarred.

Vallejo Police Officer Kevin McCarthy responded to Faucett's home on February 17. The interior lights were off. He noticed what appeared to be fresh blood on the garage door leading into the residence. After entering the house, McCarthy heard a female voice coming from the bedroom. He and his partners announced, "Vallejo Police Department, come to the door." When McCarthy opened the bedroom door, he observed defendant, whose hands and forearms were covered in blood. Faucett was lying on the floor on her back. When Faucett arrived at the hospital, she appeared traumatized and scared.

## B. *Findings and Sentence*

The trial court found defendant guilty of all counts except the two residential burglary counts (counts I and VI), but it found him guilty of grand theft as a lesser offense of count VI, and found true the section 12022.7, subdivision (e) enhancements. The court sentenced defendant to a total prison term of 13 years 8 months: the upper term of four years on the corporal injury count (count II); consecutive eight-month terms on each of the four counts of making criminal threats, false imprisonment, and unlawful taking of an automobile (counts III, IV, VII, and IX); a consecutive term of three years on the witness dissuasion count pursuant to section 1170.15 (count V); a concurrent term of two years for grand theft as a lesser included offense of residential burglary (count VI); a consecutive term of four years for the great bodily injury enhancement associated with count II; and one-year sentences,

stayed pursuant to section 654, for each of the five misdemeanors (counts X through XIV). Following pronouncement of sentence, defendant timely appealed.

## II. DISCUSSION

Defendant's appeal raises two contested issues: (1) whether his judgment of conviction must be reversed in its entirety because defendant did not waive his right to a jury trial for his second trial; or, in the alternative, (2) whether his sentences on counts III, IV, and V should have been stayed because these offenses shared the same criminal objective as his offense under count II, namely, to prevent the victim from alerting the police.[3]

A. *Jury Trial Waiver*

*Relevant Facts*

There is no dispute that on August 1, 2003, before his first trial began, defendant personally waived his right to a jury trial in the following on-the-record colloquy:

"[DEFENSE COUNSEL]: [A]nd [defendant] is, I think, prepared to waive a jury trial if need be so we don't have that additional pressure of bringing a jury in.

"THE COURT: I will defer the ruling of that matter to that time. . . . [¶] . . . [¶]

"[PROSECUTOR]: Your Honor, since [defendant] is willing to waive jury in this case, and I am prepared to as well, can we do that now so that we know that a jury trial—we don't need a trial by jury on the 19th?

"THE COURT: Fine.

"[DEFENSE COUNSEL]: Mr. Smith [defendant], you understand you have a right to a jury trial in this particular case?

"THE DEFENDANT: Yes.

---

[3] A third issue raised by defendant—whether his conviction for grand theft on count VI must be reversed because theft is not a lesser included offense of burglary—has properly been conceded by the People. (See *People v. Tatem* (1976) 62 Cal.App.3d 655, 658 [133 Cal.Rptr. 265].) We will accordingly reverse defendant's conviction on that count and order the two-year concurrent sentence he received for it to be stricken.

"[DEFENSE COUNSEL]: You understand that I am asking you at this time to give up that right to a jury trial and allow this Judge alone to decide the question of your guilt or innocence?

"THE DEFENDANT: Yes.

"[DEFENSE COUNSEL]: Historically when that happens, when someone waives his right to a jury trial, the odds of conviction are increased. You understand that?

"THE DEFENDANT: Yes.

"[DEFENSE COUNSEL]: Nevertheless, knowing that, are you prepared to waive your right to a jury?

"THE DEFENDANT: Yes.

"[DEFENSE COUNSEL]: I join in the waiver."

Following the mistrial declared on August 20, 2003,[4] the issue of defendant's jury trial waiver came up again on December 8, 2003, during a hearing to set a date for the commencement of defendant's second trial. With defendant present, the following colloquy took place between the court and new defense counsel appointed for defendant:

"[DEFENSE COUNSEL]: First off, I would indicate that [defendant] previously waived his right to a jury trial, and he does continue to wish to waive his right to a jury trial and set this as a court trial. So I expect it to go two days.

"THE COURT: You said two days?

"[DEFENSE COUNSEL]: Two days. [¶] . . . [¶]

"THE COURT: All right. Thank you. This other case that [defendant] has will continue to trail the case we just set for trial.

---

[4] The mistrial came about as follows: During the first trial, the trial court granted the defense's motion to strike the entirety of Faucett's testimony after she admitted lying to police officers and committing perjury at the preliminary hearing. Faucett was excused from further testimony. In light of Faucett's unavailability as a witness, the prosecution advised that it intended to put on its case through police officer testimony about statements Faucett made to them. Defendant thereupon moved for a mistrial on the ground that his trial counsel had interviewed Faucett alone in his office, and would have no alternative but to appear as a witness in the proceeding to impeach the officers' statements. In light of defense counsel's conflict of interest, the prosecution agreed that a mistrial had to be declared.

"[DEFENSE COUNSEL]: For the record, this matter is now going to be assigned to Judge Bower in Department 15?

"THE COURT: No. It will be Judge Moelk in Department 6.

"[DEFENSE COUNSEL]: Moelk in Department 6.

"THE COURT: Yes.

"[DEFENSE COUNSEL]: Your Honor, I had reviewed the court trial issue with [defendant] with Judge Bowers, not with respect to Judge Moelk. I feel I would need to at least go over that with him again because we have discussed the dynamics of a trial. I am comfortable myself with Judge Moelk as a court trial, but I have not specifically discussed that with [defendant]. So I would like to do that, your Honor. But at least at this point in time I would indicate I would keep it as a court trial, and I would notify the Court if that was a problem, with the Court's permission. Or if you want to put it over for further setting—

"THE COURT: No. We will leave that date. But it seems to me peculiar to waive a jury trial and then say, 'Well, I am waiving it as to one judge, but I am not waiving a jury trial as to another judge.'

"[DEFENSE COUNSEL]: I understand. But because I only discussed this issue in the context of what I understood the assignments to be, I want to be sure there is no further issue.

"THE COURT: That is fine. Go ahead.

"[DEFENSE COUNSEL]: Okay. Thank you."

No further issue concerning a jury trial versus a court trial was raised by defense counsel or defendant at any time before or during defendant's second trial.[5]

*Analysis*

■ A criminal defendant has a right to a jury trial under both the California and federal Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16; *Duncan v. Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88

---

[5] As it turned out, the retrial was before Judge Bowers. As shown in the colloquy, defense counsel represented on December 8 that he had obtained defendant's approval for a court trial before Judge Bowers, and was only reserving the right to notify the court of a problem in that regard if the case was assigned to Judge Moelk.

S.Ct. 1444]; *People v. Ernst* (1994) 8 Cal.4th 441, 444–445 [34 Cal.Rptr.2d 238, 881 P.2d 298].) A defendant can waive his jury trial right by consenting to such waiver in open court: "The California Constitution permits the defendant and the prosecution to waive their right to a jury and elect a court trial, but specifies the following manner for doing so: 'A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel.' " (*People v. Ernst*, at p. 445, italics omitted, quoting Cal. Const., art. I, § 16.) As both parties concede, no published California case has decided whether a jury trial waiver remains in effect following a mistrial.

One published California case, *People v. Solis* (1998) 66 Cal.App.4th 62 [77 Cal.Rptr.2d 570] (*Solis*), has held that a jury trial waiver made before a defendant's first trial is no longer effective when the defendant is retried *following a reversal of his conviction on appeal.* (*Id.* at p. 67.) But in *Solis,* the Fourth Appellate District relied heavily on *United States v. Lee* (6th Cir. 1976) 539 F.2d 606 (*Lee*), a case that sharply distinguished a retrial after appeal from a new trial granted in the trial court without appellate intervention. (*Solis,* at pp. 65–67.)

■ The *Solis* court discussed and quoted extensively from *Lee* as follows: "[I]n [*Lee*] the . . . defendant was successful on appeal, persuading the district court to remand the matter for a retrial. Before his second trial, the defendant moved to withdraw his waiver. His request was denied and the magistrate again found [him] guilty . . . . [T]he Sixth Circuit Court of Appeals reversed . . . , holding the defendant's waiver was not operative in the retrial. It stated, '. . . [T]here are two related situations that may suggest the proper rule. The first is where a tribunal grants a new trial in the interests of justice without the intervention of a reviewing court. In this situation, it appears appropriate to hold that waiver of a jury trial or consent to trial by a magistrate should continue in force. [Citations.] . . . The second situation is when a reviewing court finds error in the conduct of a trial and reverses with directions for a new trial. In that situation the general rule is that a litigant is not bound by his [or her] prior waiver of a jury trial.' " (*Solis, supra,* 66 Cal.App.4th at p. 66, quoting *Lee, supra,* 539 F.2d at p. 608.)

The *Solis* court went on to cite additional language from *Lee* in support of the proposition that a jury waiver taken at a criminal defendant's first trial does not apply at his second trial following a successful appeal: " ' "There could be no presumption [before the first trial] that there would ever be a second trial; and therefore it should not be presumed that the parties, in making the stipulation, had in mind any possible subsequent trial after the first, to which the stipulation could refer." ' [*Lee, supra,* 539 F.2d at p. 609.] Indeed, ' "It may well be supposed that a defendant would be perfectly . . .

willing to be tried the first time by a judge, when he would not submit to a second trial by the same judge after such officer had convicted him one or more times, so that the judicial mind might not afterwards be perfectly free from the influence of bias created by the circumstances of such previous conviction. . . ." [Citations.]' " (*Solis, supra,* 66 Cal.App.4th at pp. 66–67.)

The case before us involves the first category of cases discussed in *Lee,* a retrial ordered without appellate intervention. A few out-of-state cases have held that a defendant may *withdraw* his jury trial waiver following a mistrial or the grant of a new trial without appellate intervention. (See *United States v. Groth* (6th Cir. 1982) 682 F.2d 578; *People v. Hamm* (1980) 100 Mich.App. 429 [298 N.W.2d 896]; *People v. Mixon* (1994) 271 Ill.App.3d 999 [649 N.E.2d 441, 208 Ill.Dec. 385]; cf. *United States v. Lutz* (3d Cir. 1970) 420 F.2d 414 [either side may reassert its jury trial rights after a mistrial].) But these cases are distinguishable from the circumstances before us. Defendant is not contending that the trial court improperly prevented him from withdrawing his consent to a court trial. He is insisting instead that his original consent to a court trial was of no legal effect when the first trial ended, even if he did not move to withdraw it. In fact, the cases recognizing a right to withdraw one's consent to a court trial after a mistrial arguably undercut defendant's position here insofar as they suggest that a waiver given before a mistrial is declared remains in effect *unless* it is withdrawn.

More instructive are cases in which the defendant has made a motion to withdraw his waiver of a constitutionally protected procedural right after a mistrial, but the court denies the motion as untimely. (See *U.S. v. Mortensen* (9th Cir. 1988) 860 F.2d 948 (*Mortensen*); *Zemunski v. Kenney* (D.Neb. 1992) 808 F.Supp. 703 (*Zemunski*), affd. *Zemunski v. Kenney* (8th Cir. 1993) 984 F.2d 953.) These cases squarely confront the issue of whether a defendant must act in a timely fashion to withdraw his consent after a mistrial or whether that consent is deemed instead to expire automatically when the mistrial is declared.

In *Mortensen,* the defendant consented to a jury trial before a federal magistrate judge in lieu of an article III district court judge. (*Mortensen, supra,* 860 F.2d at p. 949.) When the jury failed to reach a verdict, the magistrate ordered a retrial. (*Ibid.*) On the morning of trial, the defendant sought to withdraw his consent to have the case tried before a magistrate judge. (*Ibid.*) The case was transferred to a district court judge for a ruling on the defendant's motion. (*Ibid.*) The district judge denied the motion and returned the matter to the magistrate for trial. (*Ibid.*) On appeal from defendant's subsequent conviction, the Ninth Circuit Court of Appeals held that "consent to trial before a magistrate is not automatically cancelled by a mistrial but continues in force until it is revoked or withdrawn in a timely

fashion." (*Id.* at p. 950.) In so holding, the appellate panel followed *Lee* in distinguishing between cases in which the retrial does or does not result from a reversal on appeal: "The rule developed in *Lee* states . . . that so long as the jurisdiction of the trial court is not broken by the taking of an appeal, the consent continues through subsequent proceedings. We find this rule reasonable. [¶] The continuity of consent, however, is only a presumption. Although jurisdiction might remain unbroken, consent can be withdrawn by the defendant if done in a timely manner." (*Ibid.*)

In *Zemunski*, the defendant waived a jury in his trial for burglary. (*Zemunski, supra*, 808 F.Supp. at p. 705.) A mistrial was declared when the trial judge became ill during the trial. (*Ibid.*) On the day his retrial was to commence, the defendant made an oral motion to set aside his jury trial waiver, which was denied. (*Ibid.*) He was thereafter found guilty of burglary by the court. (*Id.* at p. 704.) On petition for a writ of habeas corpus, the defendant contended that any waivers from the first trial were rendered null and void by the mistrial. (*Id.* at p. 706.) The district court rejected this argument, in reliance on the reasoning of *Mortensen* and on authorities holding that a mistrial does not in general invalidate pretrial proceedings and rulings made in the case. (*Zemunski*, at pp. 710–716.) The district court upheld the denial of defendant's motion to withdraw his consent based on evidence in the record that the motion and defendant's original waiver had both been intended to delay the proceedings.[6] (*Zemunski,* at p. 716.)

Defendant's attempt to withdraw his consent in this case is even more belated than the motions at issue in *Mortensen* and *Zemunski*. Defendant took no action to withdraw his consent to a court trial at any time until this appeal. Unlike the situation in *People v. Bracey* (2004) 213 Ill.2d 265 [821 N.E.2d 253, 290 Ill.Dec. 202], a case defendant cites, the trial court in this case did not leave defendant and his counsel with any impression that he was bound by his initial waiver of a jury trial. (See *People v. Bracey, supra*, 821 N.E.2d at p. 257 [finding no effective consent to a court trial at the defendant's second trial on the ground that "everything in the record indicates that defendant was led to believe that his jury waiver [before the first trial] obligated him to a bench trial once again"].) To the contrary, defense counsel's comments in open court on December 8, 2003, in defendant's presence, coupled with defendant's silence on the issue until after he was tried and convicted by the court, are strong evidence that he in fact reconsidered his jury trial waiver and reached an informed and voluntary decision not to withdraw it before the second trial.

---

[6] In affirming *Zemunski*, the Eighth Circuit Court of Appeals held that a mistrial does not automatically cancel a jury waiver, but that a defendant may withdraw the waiver before the retrial, if the withdrawal is timely. (*Zemunski v. Kenney, supra*, 984 F.2d at p. 954.)

■ To find in defendant's favor on this record, we would have to hold that defendant's mistrial *automatically canceled* his consent to waive a jury such that he was entitled to a jury trial at the second trial unless he entered a new in-court waiver in conformity with article I, section 16 of the California Constitution. We decline to impose such a procedural straightjacket. Consistent with the analysis in *Mortensen*, we hold that as long as the second trial comes about as the result of a mistrial rather than a reversal on appeal, the defendant's consent to a court trial continues in effect unless the defendant timely moves to withdraw it.

■ In our view, this result flows from rational presumptions about the scope of defendant's consent to waive his jury trial rights.[7] Defendant did not consent to the mere commencement of a court trial in this case. He consented to have the court hear *and decide* the entire case. The mistrial *interrupted* the proceeding to which defendant had already agreed. Unlike other circumstances in which it might be argued that the defendant did not consent to a second court trial, the *completion* of a court trial following a mistrial in no manner exceeds the scope of defendant's original consent. At the other end of the spectrum, it is not reasonable to presume that when a defendant originally consents to a court trial he is agreeing that if he is convicted and prevails on appeal, he will submit to another court trial by the same tribunal that has already found him guilty.[8] (*Solis, supra,* 66 Cal.App.4th at pp. 66–67.)

Accordingly, the trial court did not violate defendant's constitutional right to a jury trial by retrying him without putting a second in-court waiver of his jury right on the record.

B.   *Consecutive Sentences**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[7] Defendant points out that *Lee* relied in part on rule 33 of the Federal Rules of Criminal Procedure (18 U.S.C.) in opining that a defendant's consent to a court trial should be treated as continuing in the case of a retrial ordered as a result of a motion in the trial court. (*Lee, supra,* 539 F.2d at p. 608.) To that extent, we agree with defendant that *Lee* is not relevant or persuasive in the case before us. However, we believe the distinction made in *Lee* is viable on other grounds, as recognized in the cases that have applied it.

[8] The issue of whether the granting of a new trial by the trial court automatically vitiates a defendant's original consent to a court trial is not before us. In our view, however, the defendant's consent to a court trial encompasses the entire trial process down to and including pronouncement of judgment. Since a new trial motion must be made before judgment is pronounced (§§ 1181, 1182), any new trial ordered as a result of such a motion would ordinarily fall within the scope of the defendant's original consent, unless that consent has been withdrawn by timely motion.

<sup>*</sup>See footnote, *ante,* page 924.

## III. DISPOSITION

The judgment as to count VI only is reversed, and the associated two-year concurrent sentence is stricken. The eight-month sentences imposed in connection with counts III and IV are stayed. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting these modifications and to forward a certified copy of same to the Department of Corrections.

Stein, Acting P. J., and Swager, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 2006. Kennard, J., was of the opinion that the petition should be granted.